# Illinois Official Reports

## Appellate Court

---

**CE Design Ltd. v. HealthCraft Products, Inc.**, 2017 IL App (1st) 143000

---

| | |
|---|---|
| Appellate Court Caption | CE DESIGN LTD., Individually and on Behalf of the Certified Class, as Assignees, Plaintiff, Citation Petitioner, and Counter Citation Respondent-Appellant and Cross-Appellee, v. HEALTHCRAFT PRODUCTS, INC., Defendant (ING Insurance Company of Ontario, Citation Respondent and Counter Citation Petitioner-Appellee and Cross-Appellant). |
| District & No. | First District, Second Division<br>Docket No. 1-14-3000 |
| Filed | May 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-CH-18105; the Hon. Rodolfo Garcia, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Bock & Hatch, LLC, of Chicago (Phillip A. Bock, of counsel), and Anderson + Wanca, of Rolling Meadows (Brian J. Wanca, David M. Oppenheim, and Jeffrey A. Berman, of counsel), for appellant.<br><br>Tressler LLP, of Chicago (James K. Borcia, of counsel), for appellee. |

| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff CE Design Ltd. (CE Design), individually and on behalf of the certified class, appeals from an order of the circuit court in a collection case denying CE Design's motion for turnover and its citation to discover assets. CE Design argues the court erred in recognizing the judgment of a Canadian court finding it had jurisdiction over CE Design and that ING Insurance Company of Ontario (ING) had no duty to defend or indemnify against a judgment held by CE Design against its insured, HealthCraft Products, Inc. (HealthCraft). ING obtained a judgment against CE Design in the Canadian proceeding for fees and costs. The circuit court denied enforcement of the Canadian judgment against CE Design finding it unenforceable because it did not comport with Illinois and United States standards of due process. ING cross-appeals. For the following reasons, we affirm the circuit court's dismissal of CE Design's motion for turnover and citation to discover assets against ING and we reverse the circuit court's dismissal of ING's citation to discover assets against CE Design.

¶ 2 BACKGROUND

¶ 3 CE Design was a company based in Rolling Meadows before it ceased operations in 2010. HealthCraft, a Canadian company with its principal place of business in Ontario, is in the business of supplying home health equipment. ING is a Canadian insurance company licensed in Ontario. ING issued a comprehensive general liability insurance policy to HealthCraft for the relevant time period.

¶ 4 On October 29, 2003, CE Design filed a class action complaint in Cook County against HealthCraft alleging that CE Design received unsolicited fax transmissions from HealthCraft on August 12, 2003. HealthCraft was served with the complaint in its Ontario office on December 11, 2003, and tendered its defense to ING on December 23, 2003. ING acknowledged receipt of the tender of defense on January 5, 2004, but stated that it was investigating the claim and it was reserving its rights pending an investigation. HealthCraft retained its own defense counsel and moved to dismiss CE Design's complaint. While the motion to dismiss was pending, HealthCraft and CE Design entered settlement discussions, with the settlement preliminarily approved by the circuit court on December 22, 2004. The settlement provided for a consent judgment against HealthCraft for $543,500 and the assignment of all of HealthCraft's rights under the ING policy to CE Design; CE Design released HealthCraft from any further liability, agreed not to execute on any of HealthCraft's assets, and would only seek recovery from the ING policy. Neither CE Design nor HealthCraft gave notice of the settlement discussions to ING. ING first received notice that the parties were discussing a settlement agreement on May 13, 2005. Final approval of the settlement agreement and judgment against HealthCraft occurred on June 27, 2006. ING became aware of the terms of the settlement agreement when it received a copy of the circuit court's dismissal order.

¶ 5     On May 17, 2005, while the matter was still pending in the circuit court of Cook County, ING filed a declaratory judgment action against HealthCraft in the Ontario Superior Court of Justice. ING alleged that the policy did not cover the claims raised in CE Design's lawsuit against HealthCraft.

¶ 6     On July 27, 2006, CE Design initiated third party citation proceedings against ING seeking to enforce the judgment in Cook County. CE Design served ING in Ontario with its citation to discover assets on July 29, 2006.

¶ 7     Sometime thereafter, ING brought a motion to amend its application in the Ontario court to add CE Design as a party respondent and to amend its prayer for relief to seek an order that it was not required to defend or indemnify CE Design or HealthCraft. On October 19, 2006, the Ontario court ordered that CE Design be added as a party respondent to the Ontario action and ordered that CE Design be served with the amended application that was filed on the same day. CE Design was served on November 7, 2006.

¶ 8     On November 30, 2006, CE Design through counsel in Ontario, filed a motion to strike ING's amended application contesting the Ontario court's jurisdiction over CE Design and on *forum non conveniens* grounds. ING filed a motion opposing CE Design's motion on December 15, 2006.

¶ 9     On December 29, 2006, ING moved to stay the action pending in Cook County due to the action pending in Ontario. CE Design opposed the motion arguing that it was not subject to the Ontario court's jurisdiction because it had never done business in Ontario. On February 21, 2007, the circuit court granted ING's motion to stay the proceeding pending the outcome of CE Design's motion to dismiss pending in Ontario reasoning that the coverage issues were first joined in Ontario and therefore the Ontario court was best suited to decide the coverage issues.

¶ 10    On March 8, 2007, the Ontario court denied CE Design's motion to dismiss ruling that Canadian law applied to the contract between ING and HealthCraft, and the Ontario court had jurisdiction because there was a real and substantial connection with the province of Ontario. The Ontario court further held that CE Design was standing in the shoes of HealthCraft as its assignee, and because HealthCraft is an Ontario company and the contract was entered into in Ontario, Ontario was the convenient forum.

¶ 11    On June 30, 2009, the Ontario court decided the merits of the coverage issues and found that ING had no duty to defend HealthCraft and had no duty to indemnify either HealthCraft or CE Design with respect to the judgment obtained by CE Design. The court reasoned that CE Design's claims fell outside of the policy coverage and that HealthCraft breached its duty to cooperate and advise ING. The Canadian court further found that CE Design's claims were barred by the Canadian Insurance Act and HealthCraft's avoidance of liability in the settlement precluded coverage. The court ordered CE Design to pay ING costs in the amount of $20,746.56.

¶ 12    On August 18, 2009, the Ontario judgment was registered by ING in the circuit court of Cook County. CE Design filed a motion to quash and dismiss ING's petition to register the Ontario judgment arguing that the Ontario court never had personal jurisdiction over CE Design or the class members. On July 14, 2011, the circuit court denied CE Design's motion to quash, recognized the Ontario judgment, and struck CE Design's citation to discover assets directed at ING. The court however, refused to enforce the money judgment entered against CE Design.

¶ 13    On August 12, 2011, CE Design filed a motion for reconsideration of the part of the court's July 14, 2011, order striking the citation to discover assets directed to ING. On the same date, ING sought reconsideration of the motion that vacated the money judgment entered against CE Design. Both motions to reconsider were granted on March 7, 2012. On August 24, 2014, the circuit court denied CE Design's motion for turnover and its citation to discover assets finding that the question of whether the Ontario court had personal jurisdiction over CE Design was resolved by the circuit court's July 14, 2011, order granting ING's motion to register the Ontario judgment. In addition, the circuit court dismissed ING's citation to discover assets directed at CE Design, finding the separate award of fees and costs entered against CE Design by the Ontario court did not comport with Illinois and United States standards of due process and therefore was unenforceable by the circuit court.

¶ 14    CE Design filed a timely notice of appeal on September 26, 2014. ING filed a notice of cross-appeal on October 1, 2014.

¶ 15                                              ANALYSIS

¶ 16    CE Design argues that the Ontario judgment is not binding because (1) ING inadequately proved the foreign judgment, (2) a judgment against HealthCraft does not affect the rights of CE Design or the class, and (3) the Ontario court lacked jurisdiction over CE Design and therefore its default judgment against CE Design is void and unenforceable. CE Design also argues that even if the Ontario court had jurisdiction, its judgment would be unenforceable as contrary to Illinois public policy. Furthermore, CE Design argues that ING had a duty to defend HealthCraft.

¶ 17    CE Design first argues that ING inadequately proved the Ontario judgment, where such issues generally must be proven by expert testimony. ING argues that CE Design has waived this issue where it failed to raise it in the trial court. We agree.

¶ 18    A review of CE Design's motion to quash and dismiss ING's petition for registration of foreign judgment shows that CE Design opposed the registration of the foreign judgment for six specific reasons, none of which included an argument that ING inadequately proved the Ontario judgment. "It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Waiver aside, we have found no Illinois law, nor has CE Design cited to any, requiring a movant to prove foreign law by expert testimony in conjunction with the simple act of registration of a foreign judgment. We therefore reject this argument.

¶ 19    CE Design next argues that the Ontario court lacked personal jurisdiction over CE Design, and therefore, its default judgment against CE Design is void and unenforceable. ING argues that CE Design appeared through counsel and challenged the Ontario court's personal and subject matter jurisdiction and lost prior to the Ontario court ruling that ING had no duty to defend HealthCraft under the insurance policy and no duty to indemnify HealthCraft or CE Design with respect to the judgment obtained by CE Design, and therefore, this court is barred from considering CE Design's arguments relating to the default judgment based on the doctrine of *res judicata*.

¶ 20    "[J]udgments rendered by courts outside the State of Illinois" are enforced by two uniform statutes: the Uniform Foreign Money-Judgments Recognition Act (Recognition Act)

(735 ILCS 5/12-618 *et seq.* (West 2008))[1] and the Uniform Enforcement of Foreign Judgments Act (Enforcement Act) (735 ILCS 5/12-650 *et seq.* (West 2008)). *Pinilla v. Harza Engineering Co.*, 324 Ill. App. 3d 803, 806-07 (2001). The Recognition Act recognizes judgments of a foreign country that is "any governmental unit other than the United States, or any state." (Internal quotation marks omitted.) *Id.* at 807. "The Recognition Act provides that as long as a foreign judgment is 'final and conclusive and enforceable where rendered' [(735 ILCS 5/12-619 (West 2008))], it 'is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit' [(735 ILCS 5/12-620 (West 2008))]." *Pinilla*, 324 Ill. App. 3d at 807. On the other hand, the Enforcement Act governs enforcement of judgments outside of the State of Illinois from "a court of the United States or of any other court which is entitled to full faith and credit in this State." 735 ILCS 5/12-651 (West 2008).

¶ 21    "The Recognition Act serves the purpose only of allowing [an Illinois] court a means to recognize a foreign country's judgment. The Recognition Act does not establish the procedure to file or enforce a foreign judgment." *Pinilla*, 324 Ill. App. 3d at 807. "The Recognition Act does provide, however, that once a foreign judgment is recognized, it is to be enforced in the same manner as the judgment of a sister state." *Id.*; 735 ILCS 5/12-620 (West 2008). The Enforcement Act governs the methods to file and enforce a foreign judgment. *Pinilla*, 324 Ill. App. 3d at 807.

¶ 22    The Enforcement Act provides that a recognized foreign country's judgment "is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a circuit court for any county of this State and may be enforced or satisfied in like manner." 735 ILCS 5/12-652(a) (West 2008); *Pinilla*, 324 Ill. App. 3d at 808 (once a foreign country's judgment is recognized, it is subject to enforcement procedures). Therefore, local and foreign judgments are subject to the same enforcement and satisfaction mechanisms and standards.

¶ 23    The exception to this rule is that a circuit court may inquire into the defenses of lack of jurisdiction in the foreign court, as CE Design asserts occurred here, or fraud in the procurement of the judgment, provided those issues have not been litigated in the foreign court. *Morey Fish Co. v. Rymer Foods, Inc.*, 158 Ill. 2d 179, 186-87 (1994) (holding that full faith and credit must be given to a foreign judgment when the issue of jurisdiction has been litigated and decided in the rendering court); *First Wisconsin National Bank of Milwaukee v. Kramer*, 202 Ill. App. 3d 1043, 1048, (1990) (same); see *Brownlee v. Western Chain Co.*, 49 Ill. App. 3d 247, 251 (1977) (citing *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 524-26 (1931)); *Holy Cross Hospital, Inc. v. Rossi*, 171 Ill. App. 3d 637, 639 (1988). If the issue of jurisdiction was litigated in a foreign court, an Illinois court is precluded from inquiring into the foreign court's jurisdiction under the doctrine of *res judicata*. *First Wisconsin National Bank*, 202 Ill. App. 3d at 1048; *Ross & Chatterton Law Offices v. Lewis*, 109 Ill. App. 3d 856, 857-58 (1982); *Transamerica Trade Co. v. McCollum Aviation, Inc.*, 98 Ill. App. 3d 430, 432 (1981); *Brownlee*, 49 Ill. App. 3d at 251. If the issue of jurisdiction has been litigated and decided in the foreign court, the registering court is compelled to accord full faith and credit to that ruling. *Morey Fish Co.*, 158 Ill. 2d at 186-89; *Brownlee*, 49 Ill. App. 3d at 251; *Baldwin*, 283 U.S. at 524-26.

_____

[1]Sections 12-618 through 12-626 (735 ILCS 5/12-618 to 12-626 (West 2008)) were repealed by Public Act 97-140 (eff. Jan. 1, 2012).

¶ 24    In the Ontario court, CE Design argued that the Ontario court lacked personal jurisdiction over CE Design under Canadian law. CE Design argued that it had never had an office, owned real estate, or done business in Ontario; had never had any employees in Ontario; and had not entered into any contracts in Ontario. CE Design challenged the Ontario court's assumed jurisdiction arguing that there was no "real and substantial connection between the cause of action and the forum province" and that the court "should decline to exercise jurisdiction over the out of province respondent because there is another forum that is more convenient." CE Design further argued that the convenient forum test was discretionary but factors to consider in applying the test were (1) the location of the majority of the parties, (2) the location of key witnesses and evidence, (3) contractual provisions that specify law or accord jurisdiction, (4) the avoidance of multiplicity of proceedings, (5) the applicable law and its weight in comparison to the factual question to be decided, (6) geographical factors suggesting the natural forum, and (7) whether declining jurisdiction would deprive the plaintiff of a legitimate juridical advantage available in domestic court.

¶ 25    With respect to the real and substantial connection, CE Design argued that despite the fact that the contract for insurance between ING and HealthCraft was entered into in Ontario, there was little real and substantial connection between the cause of action initiated by CE Design and Ontario because the damages sustained by CE Design and the class occurred in Cook County, Illinois. Applying the *forum non conveniens* test, CE Design argued that CE Design and the class were located in Illinois, while ING and HealthCraft are located in Ontario. CE Design also argued that the evidence with respect to the faxes will be from CE Design and the class, all of whom are located in Illinois. CE Design acknowledged that the ING policy was written in Ontario but argued that there was no doubt the policy contemplated activity that involved an inherent risk of harm to parties outside of Ontario. CE Design also argued that the circuit court of Cook County had jurisdiction of all matters relating to CE Design's recovery against ING because ING voluntarily submitted to the jurisdiction of Cook County. CE Design further argued that there was no evidence to suggest that Illinois liability law differed at all from the laws of Ontario and CE Design would have no difficulty recovering from the ING policy in Illinois.

¶ 26    ING responded to CE Design's motion and argued that there was a real and substantial connection between Ontario and the subject matter of the application because ING and HealthCraft are located in Ontario and entered into a contract of insurance in Ontario. In addition, there was a connection between CE Design and Ontario in that, as an alleged assignee, it stood in the shoes of HealthCraft. Furthermore, CE Design purported to claim an interest in the proceeds of ING's policy of insurance as the result of the assignment. ING further argued that there was no significant unfairness to CE Design to be subject to the jurisdiction of the Ontario court but it would be unfair to ING for the court not to assume jurisdiction. With respect to the appropriate forum, ING argued that both ING and HealthCraft were Ontario companies, and although CE Design is not an Ontario company, it alleges rights as an assignee of HealthCraft, an Ontario company. Because the contract between ING and HealthCraft was entered into in Ontario, it is a reasonable expectation that the law of Ontario applies. The action filed in the Ontario court was first, with the citation proceeding filing in Illinois occurring while the action in Ontario was pending.

¶ 27    Although the Ontario court did not specifically use the words personal and subject matter jurisdiction, the Ontario court found Ontario was the proper law of the contract between ING

and HealthCraft, and the Ontario court had jurisdiction because there was a real and substantial connection with the province of Ontario. The Ontario court further held that CE Design was standing in the shoes of HealthCraft as its assignee, and because HealthCraft is an Ontario company and the contract was entered into in Ontario, Ontario was the convenient forum.

¶ 28        In the instant case, the issue of jurisdiction was raised by CE Design in the Ontario court. The Ontario court rejected CE Design's argument that it lacked jurisdiction. After the court ruled against CE Design on the issue of jurisdiction, CE Design, a named respondent in the proceeding, chose not to appear on any subsequent court dates and did not in any way oppose the court's finding of jurisdiction or its later finding on the issue of coverage. "A party cannot be permitted to merely file a special appearance, challenge that court's jurisdiction, and expect the lawsuit to hang in limbo! A reasonable expedition of the administration of justice cannot be so thwarted." *Ross & Chatterton Law Offices*, 109 Ill. App. 3d at 858. CE Design advanced multiple jurisdictional arguments before the Ontario court, and after it lost, it pursued no further action in the Ontario court to challenge or reverse that ruling; it cannot now look to Illinois to relitigate the issue of Ontario's jurisdiction. *Id.* Therefore, CE Design's challenge to the Ontario court's jurisdiction is barred by the doctrine of *res judicata*.

¶ 29        Similarly, CE Design's challenge to the Ontario court's ruling on the issue of coverage is also barred by the doctrine of *res judicata*. "Under the doctrine of full faith and credit, the forum court will not rehear a case on its merits because the judgment is *res judicata* ***." (Internal quotation marks omitted.) *All Seasons Industries, Inc. v. Gregory*, 174 Ill. App. 3d 700, 703 (1988). Under principles of *res judicata*, the nature and amount of the judgment, together with all defenses that could have been raised in the original trial court, are foreclosed. *Falcon v. Faulkner*, 209 Ill. App. 3d 1, 13 (1991); *Dawson v. Duncan*, 144 Ill. App. 3d 532, 537 (1986). All the coverage issues advanced in this court should have, but were not, advanced in ING's Ontario coverage proceeding.

¶ 30        On cross-appeal, ING argues that because CE Design's motion to strike ING's registration of the Ontario judgment was denied, there was no basis for the circuit court to deny its citation to discover assets and to strike the portion of the award in ING's favor regarding costs because the circuit court found that the Ontario court had jurisdiction over CE Design for purposes of recognition and enforcement of the Ontario judgment. In the August 28, 2014, order the court stated that "the separate award of fees and costs entered against CE Design in the Ontario judgment does not comport with Illinois and United States standards of due process and therefore is unenforceable in this Court." The court gave no explanation for its finding.

¶ 31        As previously stated, a judgment from a foreign country is entitled to "full faith and credit." 735 ILCS 5/12-620 (West 2008). The circuit court's refusal to enforce the costs portion of the Ontario judgment against CE Design is inconsistent with the circuit court's recognition and enforcement of the Ontario judgment. We find no authority for the proposition that the circuit court can pick and choose the portions of a foreign court's order that will be recognized and enforced. The circuit court was required to give the Ontario court's judgment order the "full faith and credit" to which it was entitled. Therefore, we reverse the circuit court's ruling denying ING's citation to discover assets on the basis that the award of fees and costs entered by the Ontario court against CE Design violated due

process and was unenforceable, and remand for further proceedings consistent with this opinion.

¶ 32                                    CONCLUSION

¶ 33      For all the foregoing reasons, the decision of the circuit court of Cook County denying CE Design's motion for turnover of insurance proceeds is affirmed. We reverse the circuit court's ruling on ING's citation to discover assets and that portion of the circuit court's ruling finding the Ontario court judgment awarding ING costs to be unenforceable on the basis of due process and remand for further proceedings.

¶ 34      Affirmed in part and reversed in part; cause remanded.